***NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| COREY MILTON GRANT, | : : : | |
| Petitioner, | : : | Civil Action No. 12-6844 (JLL) |
| v. | : : : | **OPINION** |
| UNITED STATES OF AMERICA, | : : | |
| Respondent. | : : : | |

**LINARES**, District Judge:

Presently before the Court is the motion of Corey Milton Grant ("Petitioner" or "Mr. Grant") brought pursuant to 28 U.S.C. § 2255. (ECF No. 8.) Respondent, United States of America ("Respondent"), filed an Answer (ECF No. 12) and Petitioner filed a Reply (ECF No. 18). For the following reasons, the Court will grant the motion.

**I. BACKGROUND**

On January 25, 1991, a superseding indictment was filed in the District of New Jersey, charging Petitioner and eight other individuals with eight predicate racketeering acts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Grant v. U.S.*, No. 06-5952, 2008 WL 360982, at * 1 (D.N.J. Feb. 8, 2008). In addition to the RICO charges, Petitioner was charged with conspiring to possess cocaine with intent to distribute; possession of cocaine with intent to distribute; and possession of a weapon in relation to a crime of violence. *Id.* On May 13, 1992, a jury convicted Petitioner of the murder of Mario Lee; the attempted murder of Dion Lee; conspiracy to distribute and possess cocaine with intent to distribute; and possession of cocaine with intent to distribute. *Id.* On November 10, 1992, the Court sentenced Petitioner to

life imprisonment for his jury conviction on the two RICO counts; a concurrent 40 years imprisonment for the drug offense convictions; and a consecutive sentence of 5 years for the weapons conviction. *Id.* at *2. The Third Circuit affirmed his conviction and sentence on August 23, 1993. *U.S. v. Grant*, 6 F.3d 780 (3d Cir. 1993).

On December 11, 2006, Petitioner filed his first petition pursuant to 28 U.S.C. § 2255. *Grant v. USA*, Civil Action No. 06-5952 (HAA). On May 15, 2007, the Court dismissed the petition as untimely. (*Id.* at ECF No. 6.) On October 2, 2012, Petitioner filed his second § 2255 Motion, which is the basis of the instant case. Thereafter, Petitioner's counsel filed an application with the Third Circuit for leave to file a second or successive motion under 28 U.S.C. § 2255, which was granted on October 3, 2013. *In re Pendleton*, 732 F.3d 280 (3d Cir. 2013). Petitioner then filed an amended § 2255 petition (ECF No. 8), Respondent filed an Answer (ECF No. 12) and Petitioner filed a Reply (ECF No. 18).

Both parties agree that *Miller v. Alabama*, ––– U.S. ––––, 132 S.Ct. 2455, 2460, 183 L.Ed.2d 407 (2012) stated a new, substantive constitutional rule that the Supreme Court has made retroactive through a combination of holdings. Petitioner also argues that *Miller* should be applied retroactively because in the companion case to *Miller*, the Court vacated the life sentence imposed on Kuntrell Jackson, a petitioner whose case had come to the Supreme Court from the Arkansas Supreme Court on collateral review. (Pet.'s Br. 10.) While the Government concedes that *Miller* should be applied retroactively, it argues that Petitioner in this case should not be re-sentenced because the analysis undertaken by the court at Petitioner's original sentencing hearing met the substantive requirements set forth by *Miller*. (Resp't's Br. 21.)

2

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

Unless the moving party claims a jurisdictional defect or a Constitutional violation, the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)).

### B. Analysis

#### 1. Retroactivity of *Miller*

In *Miller v. Alabama*, ⸺ U.S. ⸺, 132 S.Ct. 2455, 2460, 183 L.Ed.2d 407 (2012), the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" Based on this holding, as noted above, Petitioner sought authorization from the Third Circuit to file a successive petition under 28 U.S.C. § 2255. In "tentatively" granting Petitioner leave to file

3

a second or successive § 2255 motion, the Third Circuit stated that this Court "must dismiss the habeas corpus petition for lack of jurisdiction if it finds that the requirements for filing such a petition have not in fact been met." *Pendleton*, 732 F. 3d at 283. In other words, this Court lacks jurisdiction over Petitioner's successive § 2255 motion unless it determines that the motion contains a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. 2255(h)(2).

Courts which have addressed the issue of *Miller*'s retroactivity are divided. The majority of the Courts of Appeals, including the Third Circuit, which have preliminarily addressed the issue in the context of granting or denying permission to file a second or successive §2254 or § 2255 petition, have found that petitioners made a *prima facie* showing that *Miller* is retroactive.[1] Several district courts in the Eastern District of Virginia, as well as district courts in Minnesota and the Southern District of Mississippi, have found that *Miller* is not retroactive.[2] On the other

---

[1] *Compare Evans-Garcia v. U.S.*, 744 F.3d 235 (1st Cir. 2014) (finding that petitioner made a prima facie showing of retroactivity); *In re Pendleton*, 732 F.3d 280 (3d Cir. 2013) (same); *In re Simpson*, 555 F. App'x 369 (5th Cir. 2014) (same); *In re Williams*, --- F.3d ----, 2014 WL 3585514 (D.C. Cir. July 22, 2014) (same); *In re Clark*, 554 F. App'x 276 (5th Cir. 2014) (same); *Johnson v. U.S.*, 720 F.3d 720 (8th Cir. 2013) (same) *with In re Morgan*, 713 F.3d 1365 (11th Cir. 2013) (finding that petitioner did not make a prima facie showing of retroactivity sufficient to warrant permission to file a second or successive § 2255); *Craig v. Cain*, No. 12–30035, 2013 WL 69128 (5th Cir. Jan. 4, 2013) (denying reconsideration motion of a denial of a certificate of appealability for a § 2254 because *Miller* is not retroactive).

[2] *See Dumas v. Clarke*, No. 13-398, 2014 WL 2808807 (E.D.Va. June 20, 2014); *Stewart v. Clarke*, No. 13-388, 2014 WL 2480076 (E.D.Va. Mar. 13, 2014); *Flowers v. Roy*, No. 13-1508, 2014 WL 1757884 (D.Minn. Feb. 3, 2014); *Martin v. Symmes*, No. 10-4753, 2013 WL 5653447 (D.Minn. Oct. 15, 2013); *Thompson v. Roy*, No. 13-1524, 2014 WL 1234498 (D.Minn. Mar. 25, 2014); *Ware v. King*, No. 12-147, 2013 WL 4777322 (S.D.Miss. Sept. 5, 2013); *Malvo v. Mathena*, No. 13-375, 2014 WL 2808805 (E.D.Va. June 20, 2014); *Landry v. Baskerville*, No. 13-367, 2014 WL 1305696 (E.D.Va. Mar. 31, 2014); *Sanchez v. Vargo*, No. 13-400, 2014 WL 1165862 (E.D.Va. Mar. 21, 2014); *Contreras v. Davis*, No. 13-772, 2013 WL 6504654 (E.D.Va. Dec. 11, 2013); *Johnson v. Ponton*, No. 13-404, 2013 WL 5663068 (E.D.Va. Oct. 16, 2013).

hand, district courts in the Eastern District of Pennsylvania, Arizona, Eastern District of Michigan, Southern District of New York and the Eastern District of Virginia have all found *Miller* to be retroactive.[3]

In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court announced the non-retroactivity rule that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310, 109 S.Ct. 1060. To determine whether a new rule applies retroactively to a Petitioner's conviction on collateral review, *Teague* sets forth a three-step approach for federal courts to follow: first, determine the date petitioner's judgment of conviction became final; second, ascertain whether the rule announced by the Supreme Court is new; and third, decide whether one of the two exceptions to non-retroactivity apply, as set forth below. *See Caspari v. Bohlen*, 510 U.S. 383, 390 (1994).

For the first step, it is without question that Petitioner's case was final many years before the rule was announced in *Miller* in 2012. With regard to the second step, it is also clear that *Miller* announced a new rule. "[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Chaidez v. U.S.*, ––– U.S. –––, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013). The *Miller* rule was not dictated by cases or precedent that existed at the time Petitioner's conviction became final in 1993. To create the new

---

[3] *U.S. v. Orsinger*, No. 01-1072, 2014 WL 3427573 (D.Ariz. July 15, 2014); *Hill v. Snyder*, No. 10-14568, 2013 WL 364198 (E.D.Mich. Jan. 30, 2013); *Alejandro v. U.S.*, No. 13-4364, 2013 WL 4574066 (S.D.N.Y. Aug. 22, 2013); *Songster v. Beard*, No. 04-5916, 2014 WL 3731459 (E.D.Pa. July 29, 2014); *McLean v. Clarke*, No. 13-409, 2014 WL 5286515 (E.D.Va. June 12, 2014); *Pete v. U.S.*, No. 03-355, 2014 WL 88015 (D.Ariz. Jan. 09, 2014).

rule, the Court combined two lines of precedent: (1) "categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty;" and (2) "mandatory imposition of capital punishment, requiring that sentencing authorities consider the characteristics of a defendant and the details of his offense before sentencing him to death." *Miller*, 132 S. Ct. at 2463-64. The Supreme Court reached its holding in *Miller* by extending those two lines of precedents. *Id.* at 2464 ("Here, the confluence of these two lines of precedent leads to the conclusion that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment"). Prior to *Miller*, it was "not dictated by precedent" that mandatory life without parole sentences for juveniles violate the Eighth Amendment. In addition, both parties have conceded that *Miller* states a new rule. *See Evans–Garcia v. United States*, 744 F.3d 235, 238 (1st Cir.2014) (accepting government's concession that *Miller* announced a new rule); *In re Pendleton*, 732 F.3d 280, 282 (3d Cir.2013) (per curiam) (accepting parties' stipulation that *Miller* announced a new rule).

The third step of the *Teague* analysis is to determine whether the new rule falls into an exception. The Court identified two such exceptions to the general rule: (1) a rule that "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe;"[4] and (2) a "watershed rule of criminal procedure" that "requires the observance of those procedures that ... are implicit in the concept of ordered liberty." *Teague*, 489 U.S. at 311.

---

[4] The Supreme Court later clarified that though they have "sometimes referred to rules of this…type as falling under an exception to *Teague's* bar on retroactive application of procedural rules, *see*, *e.g.*, *Horn v. Banks*, 536 U.S. 266, 271, and n. 5, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) (per curiam); they are more accurately characterized as substantive rules not subject to the bar." *Schriro v. Summerlin*, 542 U.S. 348, 352, n.4, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).

The Supreme Court has provided further guidance as to the application of these exceptions. Substantive rules include "decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.* at 351-52 (internal citations omitted). Substantive rules also include rules that "address[] a 'substantive categorical guarante[e] accorded by the Constitution,' such as a rule 'prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Saffle v. Parks*, 494 U.S. 484, 494, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (citing *Penry v. Lynaugh*, 492 U.S. 302, 329, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989)). "Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Schriro,* 542 U.S. at 352 (internal citations omitted). In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural. *Bousley v. United States*, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

Respondent asserts, and other courts have also found, that there are both procedural and substantive elements of the *Miller* rule. *See, e.g. Songster v. Beard*, --- F.Supp.2d ----, 2014 WL 3731459, at * 3 (E.D.Pa. July 29, 2014); *McLean v. Clarke*, No. 13-409, 2014 WL 5286515, at * 9 (E.D.Va. June 12, 2014). *Miller* does require that courts utilize a certain procedure when sentencing a juvenile, however at the same time, it also alters the range of sentencing options for juveniles because mandatory life without parole is no longer an option. *See Miller*, 132 S.Ct. at 2466. It is clear that *Miller* is doing more than simply changing the process by which a juvenile should be sentenced. *In re Morgan*, 713 F.3d 1365 (11th Cir. 2013) (Wilson, C.J., concurring)

7

("[a]t the same time, by expanding the range of possible outcomes for an individual in Morgan's position rather than simply the process by which those outcomes are reached, the rule announced in *Miller* arguably includes a substantive component, too). Respondent argues, and this Court finds persuasive, that the Supreme Court's "descriptions of substantive and procedural rules under *Teague* suggest that rules that go beyond regulating only the 'manner' of determining culpability and instead categorically change the range of outcomes should be treated as substantive rules." (Resp't's Br. 17.) Juveniles who were previously only able to be sentenced to life without the possibility of parole now have a different outcome available.

The Court agrees with the positions set forth by the parties. Though it contains procedural aspects as well as substantive, it is clear that *Miller* does not merely regulate the manner in which courts sentence juveniles to life in prison without parole; it also controls whether they may do so at all. Therefore, the Court finds that the rule stated by the Supreme Court in *Miller* is substantive.[5]

**2. Application of *Miller* to Petitioner**

As discussed by the Court during the November 9, 1992 sentencing, Petitioner had a base offense level of 43 with a criminal history category of III, which resulted in a guideline range of

---

[5] The Court also finds support for retroactivity in the Court's holding in the companion case to *Miller*, *Jackson v. Hobbs*, 132 S.Ct. 548 (2011). *Miller*, a case on direct appeal, was argued with *Jackson*, a case on collateral review. Though it is not dispositive of the issue, the Court's application of *Miller* to the petitioner in *Jackson* can be viewed as a possible intention to apply *Miller* retroactively. *See Teague v. Lane*, 489 U.S. 288, 300 (1989) ("once a new rule is applied [on collateral review] to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated"). *But see Chaidez v. United States*, 133 S.Ct. 1103 (2013) (declining to apply *Padilla v. Kentucky*, 559 U.S. 356 (2010) retroactively on collateral review notwithstanding its application of a new constitutional rule to Padilla's collateral claim).

life plus five years. (Resp't's Br., Appendix, Sentencing Tr. 7:22-8:1, ECF No. 12-1.) At the time when Petitioner was sentenced, the Supreme Court had not yet decided *U.S. v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Therefore, the guidelines, and more specifically to Petitioner, the life without parole sentence, were mandatory. *Booker*, 543 U.S. at 234 ("Because they are binding on judges, we have consistently held that the Guidelines have the force and effect of laws"); *see also Evans-Garcia v. U.S.*, 744 F.3d 235 (1st Cir. 2014) ("At the time the petitioners were sentenced, the district court was bound to follow the federal sentencing guidelines, which had not yet been ruled advisory by the Supreme Court…[petitioner's] offense level and criminal history led to a range including just one sentence: life in prison without the possibility of parole.")

Nonetheless, Petitioner did seek a downward departure from the then-mandatory Sentencing Guidelines pursuant to 18 U.S.C. § 3553(b) and Guideline §5K2.0. (Resp't's Br., Appendix, Pet'r's Sentencing Submission.) Petitioner sought a downward departure based on his "age and his inner city socio-economic status." (*Id.*) His attorney argued at length for a downward departure based on those factors during the sentencing hearing, as well as in a pre-sentencing memorandum. (Resp't's Br., Appendix, Sentencing Tr. 8:16-49:14, ECF No. 12-1.) The court found as follows with regard to the request for a departure:

> Of course there are cases where the courts in these United States have departed. And there were circumstances which existed in those cases, when we talk about the *Larra* case or the other cases which you were – you and the government were kind enough to bring to the Court's attention.
>
> I say to you as clearly and as candidly as I can, without any malice, this case is not deserving, not by a stretch is it deserving of the kind of treatment that you have urged upon this Court. Mr. Grant, in my judgment, doesn't even come close to be the beneficiary of a 5K departure. And I respectfully decline to entertain the motion favorably. The sentence will be within the guideline range.

9

(*Id.* at 51:18-52:5.)

To the extent Respondent argues that the ability to seek a downward departure provided Petitioner with the review and considerations that *Miller* requires, the Court finds that argument unpersuasive. Both parties agree that the 1991 Federal Sentencing Guidelines Manual was the operative document governing Petitioner's sentencing. (Pet'r's Br. 15; Resp't's Br. 23.) Under those guidelines, as stated above, Petitioner sought a downward departure pursuant to § 5K2.0. A departure was permitted under that provision "if the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." United States Sentencing Guidelines § 5K2.0, Nov. 1991 ed. The Guidelines also specifically stated that "[a]ge (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." *Id.* at § 5H1.1.

As discussed by the Supreme Court itself in *Booker*, "departures are not available in every case, and in fact are unavailable in most. In most cases, as a matter of law, the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible." *Booker*, 543 U.S. at 234. Based on the general unavailability of downward departures, as well as the Guidelines in place at the time of Petitioner's sentencing, the Court finds that Petitioner's mere ability to seek a downward departure does not meet the requirements now set forth by the Supreme Court. *Miller* requires sentencers to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 132 S.Ct. at 2469. While Petitioner may have presented such arguments to the court when seeking a downward departure back in 1992, the court was constrained by the

10

Guidelines and relevant case law at the time. Now, the Supreme Court has explicitly stated that courts are required to take into consideration "youth and all that accompanies it," which has created a substantially different legal landscape.

Respondent's argument that the Court should find that any error was harmless is also unpersuasive. Respondent argues that "even if *Miller* were controlling law at the [time] of Grant's sentencing on November 9, 1992, there is no indication that [the sentencing judge] would had to have given him a lesser sentence." (Resp't's Br. 32.) However, based on the instruction from the Supreme Court that "given all we have said in *Roper*, *Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon," *Miller*, 132 S.Ct. at 2469, the Court cannot agree.

> When sentencing Petitioner, the judge stated as follows:
>
> Now, I said this before, I think it bears repetition; I said earlier today that there is a plague in this land. It has descended upon our land in the form of drugs. And the area most affected has been our inner cities. And the kids, the kids who have been victimized, becoming addicted, becoming recruited into becoming clockers, as they were in this case, in some instances losing their own lives, that's the tragedy here. That is the tragedy that the Court is faced with. It's going on right at this moment as I talk in the major cities of this country.
>
> And I don't pretend to have any answers. But I have responsibilities. And in this case, in the City of Elizabeth, around the Pioneer Homes and Migliore Manor, you played a prominent part, Mr. Grant, as part of the Pretlow organization in making this thing go involving hundreds and hundreds of thousands of dollars.
>
> And there hundreds of victims out on that street. Not just because they got up 10 or $15 for a vial of crack, that just isn't it. What this comes down to is the responsibility of a United States court to send a message to those who violate the laws of this land in such a violent and extensive manner, involving the pollution of our community, the destruction of our children, and, in this case, the murder of an individual. This Court wants to send a message: Those who commit those crimes will pay the penalty. Anything less, anything less, Mr. Grant, would truly be a

disservice to the community and a disservice to the system of justice.

(Resp't's Br., Appendix, Sentencing Tr. 58:14-59:15, ECF No. 12-1.)

While the Court agrees that the sentencing judge was clear about his position regarding the nature of crimes and the basis for his sentence, the Court is unable, and unwilling, to surmise how the original sentencing judge's position might have changed based on the instructions from the Supreme Court in *Miller*. As discussed above, the legal landscape in which the court handed down the original sentence is substantially different than today's. Even if it appears that the court felt strongly about a particular sentence back in 1992, it is impossible to tell whether that position would be the same taking into consideration the guidance of *Miller*. Therefore, the Court cannot find that any failure to undertake the analysis now required by *Miller* was harmless error.

### III. CONCLUSION

For the reasons stated above, Petitioner's motion is GRANTED. Petitioner is hereby entitled to a new sentencing hearing. In light of the Court's decision, the parties are hereby directed to meet and confer and file an appropriate letter application in connection with Defendant's criminal case.

An appropriate order follows.

Dated:   November 12, 2014

s/ Jose L. Linares<br>Jose L. Linares, U.S.D.J.